UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDWARD L. C.,

      Plaintiff,

 v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. C19-5208-MLP

ORDER

## I.   INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by failing to fully develop the record, in evaluating the medical evidence, in evaluating Plaintiff's testimony, in evaluating lay witness evidence, in assessing Plaintiff's residual functional capacity ("RFC"), and in his determination of the step four finding. (Dkt. # 8.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1961, has the equivalent of a high school education, and has worked as a combat medic and a personnel specialist in the United States Army. AR at 40, 42, 44, 212. Plaintiff was last gainfully employed in 2008. *Id.* at 178.

On September 13, 2017, Plaintiff applied for benefits, alleging disability as of January 1, 2009. AR at 38, 164. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 104-06, 108-10, 114-15. After the ALJ conducted a hearing on July 31, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 18-26.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff did not engage in substantial gainful activity during the period from his amended alleged onset date of January 1, 2009 through his date last insured of December 31, 2013.

Step two: Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, obesity, and degenerative joint disease of the bilateral shoulders (20 CFR 404.1520(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff could perform light work with the following limitations: he could occasionally climb ladders, ropes, or scaffolds; he could occasionally crawl; he could have occasional exposure to vibration and to extreme cold temperatures; and he could occasionally reach overhead bilaterally.

Step four: Plaintiff was still capable of performing past relevant work through the date last insured.

Step five: Because Plaintiff was still capable of performing past relevant work, the ALJ did not address step five.

AR at 18-26.

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 4-9. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 8.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Failing to Fully Develop the Record

Plaintiff argues the ALJ failed to fully develop the record because he did not consider Plaintiff's VA disability rating and associated disability evaluations. (Dkt. # 8 at 2-3.) The Commissioner argues that under the new regulations, the ALJ is no longer required to address VA disability ratings, rather, the ALJ is only required to consider the supporting evidence underlying a VA disability rating. (Dkt. # 9 at 2-3.)

Under the Commissioner's old regulations, an ALJ was required to consider the VA's determination in reaching his or her disability decision. *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Further, the ALJ had to "ordinarily give great weight to a VA determination of disability." *Id.* at 1076. However, the ALJ "could give less weight to a VA disability rating if [s]he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.* (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)).

Under the new regulations, which apply to claims filed on or after March 27, 2017, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. The ALJ will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision" that is received as part of the social security disability claim. *Id.* The new regulations therefore appear to remove the requirement that an ALJ articulate any

reasons for declining to give weight to VA disability ratings.[3] As Plaintiff's application was filed after March 27, 2017, the new regulations apply to this matter.

Here, Plaintiff's 2009 disability rating is not part of the record and the ALJ did not consider it. However, the ALJ did consider the evidence supporting Plaintiff's VA disability rating. Plaintiff testified that he "never went to VA very often," but rather went primarily to Madigan Army Medical Center. AR at 53. The record contains numerous treatment records from Madigan Army Medical Center, and other providers, that span from 2005 to 2018. *See, e.g*, *id.* at 286-953; 955-1073. The ALJ considered those records and discussed them in his decision. *Id.* at 23-25.[4] Because the ALJ considered the underlying evidence supporting Plaintiff's VA disability rating, the ALJ was not required to review the VA disability rating itself. Accordingly, the ALJ did not err in failing to fully develop the record.

**B.     The ALJ Did Not Err in Evaluating the Medical Evidence**

Plaintiff assigns error to the ALJ's evaluation of the medical evidence. (Dkt. # 8 at 3-5.) In doing so, Plaintiff's opening brief recites findings from various medical records, asserting that they support Plaintiff's testimony that he was experiencing ongoing pain during the relevant time period. (*Id.* at 5.) Merely pointing to evidence in the record and asserting that it supports Plaintiff's testimony does not establish that the ALJ erred in evaluating the medical evidence. It

---

[3] Plaintiff argues the new regulations fail to account for the Ninth Circuit's holding in *McCartey* that an ALJ should ordinarily give great weight to the VA's disability ratings. (Dkt. # 10 at 2-6.) The Court declines to adopt Plaintiff's interpretation and instead finds the ALJ is no longer required to assign weight to VA disability determinations. At least one other Court in this jurisdiction has concluded the same. *See Kathleen S. v. Comm'r Soc. Sec. Admin.*, C19-5167 (W.D. Wa. Oct. 2, 2019) (unpublished).

[4] Plaintiff asserts in a conclusory fashion that disability evaluations associated with his VA disability rating are missing from the record. (Dkt. ## 8 at 3, 10 at 5.) However, Plaintiff does not identify which evaluations are purportedly missing. Further, when asked by the ALJ during the hearing if there were any outstanding records, Plaintiff's attorney represented there was no outstanding records. AR at 34. Thus, there is no indication that any medical evaluations supporting Plaintiff's VA disability rating are missing from the record.

ORDER - 5

is the province of the ALJ to evaluate and weigh the evidence, and the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. Additionally, Plaintiff has waived the argument. A claim barely contended, unsupported by explanation or authority, may be deemed waived. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *see also Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court finds no reason to conclude, based on Plaintiff's bare assertions regarding various medical findings, that the ALJ erred in evaluating the medical evidence.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

An ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). Here, the ALJ found inconsistent statements, exaggerated symptoms, and other facts in the record undermined Plaintiff's testimony regarding the severity of his impairments. AR at 23. The ALJ also found the longitudinal medical evidence was not consistent with Plaintiff's assertions as to the severity of his impairments, especially in light of a lack of corresponding objective clinical findings. AR at 23. Plaintiff assigns error to a number of the inconsistencies cited by the ALJ. The Court will address each one in turn.

#### *1. Inconsistencies with the Longitudinal Medical Evidence*

The ALJ discounted Plaintiff's testimony because it was inconsistent with the longitudinal evidence. AR at 23-24. Plaintiff testified that the basis for his disability claim was pain in his neck, back, shoulders, wrists, knees, and ankles. *Id.* at 48-50, 68. Plaintiff testified that his average pain level was six to eight out of ten. *Id.* at 51. Plaintiff further testified that the

pain from his impairments would have prevented him from performing past relevant work or any other employment, because he would require more breaks than employers would tolerate. *Id.* at 50-51. Plaintiff also testified that during the relevant time period, he spent a lot of time in a recliner and that his pain prevented him from maintaining his trailer. *Id.* at 54, 61.

Although Plaintiff testified his impairments were severe during the relevant time period, the ALJ found Plaintiff's impairments were not documented as being especially bothersome. AR at 23. The ALJ detailed Plaintiff's degenerative disc disease of the cervical spine, but found Plaintiff's complaints were minimal and controlled with treatment. *Id.* at 24. In addition, the ALJ found Plaintiff regularly reported mild pain levels with no acute distress. *Id.* (citing, *e.g., id.* at 735 (reporting pain level as three out of ten and that naproxen and tramadol work well without side effects), 737 (reporting pain level as three out of ten), 753 (reporting pain level as two out of ten), 763 (reporting pain level at one out of ten at worst), 786 (reporting pain level at three out of ten), 796 (reporting pain does not interfere with activity)).

Plaintiff argues that many of the records cited by the ALJ predate the alleged onset date. (Dkt. # 8 at 7.) While the ALJ did cite to records that predate Plaintiff's alleged onset date, they are consistent with the records cited from the relevant time period. For example, the ALJ noted that while Plaintiff had mild to moderate bilateral carpal tunnel syndrome, he was not referred for surgery, and tests on his bilateral wrists were negative for abnormality. AR at 23 (citing *id.* at 353, 361, 576, 589). The ALJ also found Plaintiff's flat feet (pes planus) were stable. *Id.* (citing *id.* at 470). The predated records were also consistent with Plaintiff's reported mild pain during the relevant time period. *Id.* at 24 (citing, *e.g., id.* at 361 (reporting Plaintiff's carpal tunnel syndrome is relieved with splints), 373 (reporting foot pain as one and two out of ten), 446

(reporting pain level as two out of ten), 528 (reporting pain level as zero out of ten and that symptoms are intermittent in nature and happen with rare frequency)).

Similarly, the ALJ cited to records that postdate the relevant time period that also show Plaintiff's pain level as mild and well controlled with medication. AR at 24 (citing to *id.* at 696-98 (reporting pain level as three out of ten and being released without limitations), 719 (reporting pain is fairly controlled with naproxen)). The ALJ could reasonably find that inconsistency with the longitudinal medical evidence was a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony.

### 2. *Plaintiff's VA Disability Rating and Retirement*

Plaintiff reiterates his argument that the ALJ erred in not reviewing his VA disability rating and asserts the ALJ's evaluation of Plaintiff's testimony is therefore tainted. (Dkt. # 8 at 5-6.) As discussed above, the ALJ was not required to review the VA disability rating under the new regulations, and the ALJ did review the supporting evidence received as part of Plaintiff's application. The ALJ's mistaken statement that Plaintiff did not have a VA disability rating (AR at 23) is therefore harmless. *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008).

Plaintiff also asserts the ALJ erred in noting Plaintiff was not medically retired from the United States Army. AR at 23. Plaintiff argues that his participation in a Wounded Warrior unit during the last few years of his career demonstrated that he was "essentially" medically retired, even though he voluntarily retired in 2008. (Dkt. # 8 at 7.) While Plaintiff proposes an alternative interpretation of the evidence, the ALJ's interpretation is rational especially in light of the medical evidence from that time period. The ALJ's interpretation therefore must be upheld.

*Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (When the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational).

                                3.       *Relevant Time Period of Plaintiff's Testimony*

The ALJ also discounted Plaintiff's testimony because many of the complaints he testified about related to his ability to function as of July 2018, rather than his ability to function during the relevant time period between his alleged onset date of January 1, 2009 and his date last insured of December 31, 2013. AR at 23. Plaintiff appears to concede that this is true to an extent, but argues the ALJ erred by not specifically questioning him about his functioning during the relevant time period. (Dkt. # 8 at 6.) The Commissioner argues that while this may not be a clear and convincing reason to discount Plaintiff's testimony, it does not warrant remand of this matter. (Dkt. # 9 at 7.)

The Court finds that the ALJ did question Plaintiff about his functionality during the relevant time period. The ALJ specifically asked Plaintiff about his daily life after his retirement in 2008, including what he did in a typical day (AR at 54), if he engaged in any type of employment (*id.* at 56), and the conditions of his living situation after his retirement (*id.* at 57-62). Regardless, as discussed above, inconsistency with the longitudinal medical evidence was a clear and convincing reason to discount Plaintiff's testimony. Therefore, even if the ALJ did err in discounting Plaintiff's testimony because it was primarily about his functionality in 2018, any error is harmless. *Carmickle*, 533 F.3d at 1165.

                                4.       *Plaintiff's Activities*

The ALJ also discounted Plaintiff's testimony because of his reported physical activities. AR at 24. To support his findings, the ALJ cited to Plaintiff's report of operating a chainsaw and going off-roading in a motor vehicle in 2006, approximately two years prior to Plaintiff's alleged

onset date. *Id.* (citing *id.* at 368). These reported activities are of limited relevance because they do not describe Plaintiff's physical activities as they existed during the relevant time period. The record cited to by the ALJ contains only a brief statement of these activities, which includes Plaintiff's report that he was not able to do nearly as much as he used to do. *Id.* at 368. Thus, these reported activities from 2006 are not clear and convincing reasons to discredit Plaintiff's testimony. As discussed above, however, the ALJ provided a clear and convincing reason for discounting Plaintiff's testimony and therefore this error is harmless. *Carmickle*, 533 F.3d at 1165.

### 5. *Lack of Medical Source Opinion Stating Plaintiff is Disabled*

Plaintiff also argues the ALJ erred in discounting his testimony because Plaintiff did not submit a statement from a medical source that opined his impairments were consistent with a total disability to work during the relevant time period. (Dkt. # 8 at 6.) Plaintiff does not assert that any medical provider opined that he was disabled, but asserts generally that an ALJ cannot discount a claimant's testimony simply for a lack of such an opinion. (*Id.* at 6-7.) Here, the ALJ did not discount Plaintiff's testimony solely because there was of a lack of medical source opinion stating Plaintiff was disabled. Instead, it was one among several reasons, which the ALJ could properly consider. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (An ALJ's credibility finding based in part on a determination that the claimant's testimony is "unsupported by…any persuasive reports of his doctors" is not erroneous).

Plaintiff also asserts he was not required to prove a "total" disability to work. (Dkt. # 8 at 7.) Plaintiff asserts that because he turned 50 years old two years prior to his date last insured, he was only required to prove that he was unable to perform past relevant work, was limited to sedentary work, and that he had no transferable skills that would allow him to perform sedentary

work. (*Id.*) Here, Plaintiff testified that he was unable to do any past relevant work or any other employment at all due to his impairments. AR at 50. The ALJ could reasonably consider the lack of a supporting medical opinion finding Plaintiff disabled to evaluate his testimony regarding the severity of his impairments. Further, as discussed above, the ALJ evaluated the longitudinal medical evidence in the record. Based on that record, the ALJ reasonably concluded that Plaintiff's allegations of disability were not supported by the medical opinion evidence. This finding is supported by substantial evidence. Accordingly, the ALJ did not err in evaluating Plaintiff's testimony.

**D.    The ALJ Did Not Err in Evaluating Lay Witness Evidence**

Plaintiff contends the ALJ erred by assigning limited weight to statements from Plaintiff's daughter-in-law and girlfriend. AR at 25. Plaintiff's daughter-in-law provided a statement that discussed Plaintiff's physical limitations, including difficulty walking and pain in his arms and hands. *Id.* at 247-51. Plaintiff's girlfriend provided a statement which described similar physical limitations. *Id.* at 252-56. The ALJ assigned limited weight to these statements because their personal relationships to Plaintiff prevented them from being considered disinterested third parties, they made no reference to being trained to make exacting observations regarding Plaintiff's impairments, and their statements were not consistent with the preponderance of the objective medical evidence. *Id.* at 25.

In order to determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment.

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Id.* at 919.

Testimony from "other non-medical sources," such as friends and family members may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. *See Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir. 1996) (holding that the ALJ erred by rejecting the lay witness testimony based upon the witness' close relationship with the claimant). Therefore, the fact that the lay witnesses have personal relationships to Plaintiff was not a germane reason for discounting their statements.

Similarly, the lay witnesses' lack of training in making exacting observations was not a germane reason for discounting their statements. In providing their statements, the lay witnesses were not presenting expert opinion or medical findings as to the extent of Plaintiff's disability or ability to work. Rather, the lay witnesses reported their own respective observations of Plaintiff's limitation.

The ALJ's last reason, inconsistency with the preponderance of the objective medical evidence, was a germane reason to discount the lay witness testimony. As discussed above with regard to the ALJ's evaluation of Plaintiff's testimony, the medical evidence shows Plaintiff's impairments were mild and well controlled with treatment, which is inconsistent with the lay witnesses' testimony regarding the severity of Plaintiff's physical impairments. Accordingly, the ALJ did not err in evaluating the lay witness testimony.[5]

---

[5] Plaintiff reiterates his argument that the ALJ's evaluation of the evidence is tainted because he did not consider Plaintiff's VA disability rating. (Dkt. # 8 at 16.) Plaintiff's argument is unpersuasive for the reasons discussed above.

ORDER - 12

1    **E.    The ALJ Did Not Err in Determining Plaintiff's RFC**

2    Plaintiff argues that the ALJ improperly formulated Plaintiff's RFC because it did not

3    accommodate limitations described by Plaintiff and the lay witnesses, and that the RFC was

4    based in part on the ALJ's failure to obtain Plaintiff's VA disability rating. (Dkt. ## 8 at 16-17;

5    10 at 10.) Plaintiff's argument is based on assignments of error that the Court has rejected.

6    Because Plaintiff has not identified harmful error in the ALJ's assessment in the above

7    assignments of error, Plaintiff's argument regarding the RFC fails.

8    Plaintiff also asserts that the ALJ erred in basing his step four finding on vocational

9    expert ("VE") testimony that was made in response to the RFC. (Dkt. # 8 at 17.) For the reasons

10   discussed below, this argument also fails.

11   **F.    The ALJ Complied with SSR 82-62**

12   Plaintiff argues the ALJ failed to comply with SSR 82-62 in finding Plaintiff could

13   perform past relevant work. (Dkt. # 8 at 17.) At step four, a claimant must establish that his

14   severe impairment or impairments prevent him from doing past relevant work. *Pinto v.*

15   *Massanari,* 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the

16   claimant at step four, the ALJ retains a duty to make factual findings to support his conclusion.

17   *Id.* at 844-45. The claimant must be able to perform: (1) the actual functional demands and job

18   duties of a particular past relevant job; or (2) the functional demands and job duties of the

19   occupation as generally required by employers throughout the national economy.

20   SSR 82–61. "This requires specific findings as to the claimant's residual functional capacity, the

21   physical and mental demands of the past relevant work, and the relation of the residual functional

22   capacity to the past work." *Pinto,* 249 F.3d at 845 (citing SSR 82–62). Two sources of

23   information may be used to define a claimant's past relevant work as actually performed: a

properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41. *Id.* The best source for how a job is generally performed is usually the Dictionary of Occupational Titles ("DOT"). *Id.* at 846. A claimant may be found not disabled at step four based on a determination that he can perform past relevant work as it was actually performed or as it is generally performed in the national economy. SSR 82–61; SSR 82–62.

Plaintiff contends the ALJ erred in not including any findings regarding the physical and mental demands of Plaintiff's previous relevant work, however, he does not articulate any specific challenges to the ALJ's findings. (Dkt. # 8 at 17.) At the hearing, the ALJ questioned Plaintiff about his position as a personnel clerk. AR at 44-48. The ALJ also obtained testimony from the VE who rated Plaintiff's past work as a personnel clerk by the DOT as being sedentary, semiskilled work. A*id.* at 46 (citing DOT 209.362.026). The ALJ asked the vocational expert whether, assuming Plaintiff could still perform a light level of work, he would have been able to perform the work of personnel clerk if he was limited to only occasional climbing of ladders, ropes, scaffolds, and only occasional crawling, occasional exposure to vibration and occasional exposure to extreme cold temperatures, with only occasional overhead reaching bilaterally. *Id.* at 78. The VE testified that Plaintiff would, during the relevant time period, have been able to perform the work of a personnel clerk. *Id.*

The ALJ concluded that Plaintiff could perform his past relevant work as a personnel clerk as actually and generally performed, based on the VE's testimony. AR at 25-26. Specifically, the ALJ found:

> When queried whether a hypothetical individual with the claimant's age, education, work experience, and functional limitations could perform the claimant's past work between the alleged onset date and the date last insured, [the VE] testified that such an individual could still perform the occupation of personnel clerk. The undersigned accepts the testimony of the vocational expert, and in comparing the claimant's residual functional capacity with the physical and

ORDER - 14

mental demands of the work, the undersigned finds that the claimant was still able to perform it as both actually and generally performed.

*Id.* at 25-26.

The ALJ's findings meet the requirements set forth in SSR 82–62. The ALJ obtained a description of the past relevant work from the VE, posed a hypothetical to the VE that matched the RFC finding, and the VE testified that Plaintiff, with that RFC, could generally perform the past relevant work during the relevant time period. Although the ALJ did not specifically identify the mental demands of Plaintiff's past relevant work, the ALJ confirmed that Plaintiff was only presenting physical impairments, not any psychiatric or mental impairments. AR at 48. Thus, any error in not identifying the required mental demands is harmless because the remand for correction of this error would not change the outcome. Because the ALJ found Plaintiff could perform past relevant work as generally performed, which was supported by the VE's citation to the DOT, the ALJ did not err at step four.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 12th day of December, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge